UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

In re                                    )    Chapter 7
                                         )
Republic Windows & Doors, LLC,           )
                                         )    Case No. 08-34113 (JPC)
                    Debtor.              )

### STIPULATION AND FINAL ORDER AUTHORIZING (A) SECURED POST-PETITION FINANCING ON A SUPER PRIORITY BASIS PURSUANT TO 11 U.S.C. § 364, (B) USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363 AND (C) GRANT OF ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 363 AND 364

Upon the motion (the "Motion") dated December 19, 2008 of the Chapter 7 Trustee (defined below) on behalf of Republic Windows & Doors, LLC, an Illinois limited liability company (the "Debtor" or "Borrower"), (a) seeking this Court's authorization pursuant to Sections 363(c) and 364 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code") and Rules 2002, 4001(c) and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for the Debtor, inter alia, (i) to obtain post-petition financing to the extent provided herein (the "Post-Petition Financing"), up to an aggregate principal amount not to exceed $8,345,540 plus accrued interest on the aggregate principal amount (the "Commitment") from Bank of America, as successor by merger to LaSalle Business Credit, LLC (the "Lender"); (ii) to grant the Lender, pursuant to Bankruptcy Code § 364(c), security interests in all of the Debtor's currently owned and after acquired property to secure the Debtor's obligations under the Post-Petition Financing, (iii) to grant to Lender Adequate Protections Liens (defined below), and (iv) to grant the Lender priority in payment with respect to such obligations over any and all administrative expenses of the kinds specified in Bankruptcy Code §§ 503(b) and 507(b), other than as described below; (b) seeking this

Court's authorization to use the Lender's cash collateral within the meaning of Bankruptcy Code § 363(a) (the "Cash Collateral"), pursuant to Bankruptcy Code § 363(c) and to provide adequate protection, pursuant to Bankruptcy Code §§ 361, 363(c) and 364(c) to the Lender; (c) seeking a preliminary hearing (the "Preliminary Hearing") on the Motion to consider entry of an interim order pursuant to Bankruptcy Rule 4001 (the "Interim Order") authorizing the Debtor to borrow from the Lender under the Post-Petition Financing up to an aggregate of $441,680 plus accrued interest on the aggregate principal amount upon the terms and conditions set forth in this Order pending the Final Hearing referred to below; and (d) requesting that a final hearing (the "Final Hearing") be scheduled by this Court to consider entry of a final order (this "Order") authorizing on a final basis, inter alia, the Post-Petition Financing; and due and sufficient notice of the Motion and the Interim Order under the circumstances having been given to all creditors listed in the Debtor's petition and such notice being deemed sufficient under the circumstances; and the Preliminary Hearing and the Final Hearing on the Motion having been held before this Court; and upon the entire record made at the Preliminary Hearing and the Final Hearing, and this Court having found good and sufficient cause appearing therefor;

The Chapter 7 Trustee, on behalf of the Debtor and the Debtor's estate, and the Lender STIPULATE for all purposes in this Chapter 7 Case (as defined below), and the Court hereby makes the following FINDINGS:

A.       On December 12, 2008 (the "Filing Date"), the Debtor filed a voluntary petition for relief with this Court under chapter 7 of the Bankruptcy Code (the "Chapter 7 Case"). Phillip D. Levey was appointed as the chapter 7 trustee (Mr. Levey, and any successor thereto, the "Chapter 7 Trustee").

2

B.      This Court has jurisdiction over the Chapter 7 Case and the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334.  Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2).

C.      The Lender, as lender, and the Borrower, as borrower, are party to that certain Loan and Security Agreement, dated as of February 1, 2007 (as amended, supplemented or otherwise modified prior to the commencement of this Chapter 7 Case, the "Pre-Petition Credit Agreement") and all collateral and ancillary documents executed in connection therewith (the "Pre-Petition Loan Documents").  A true and correct copy of the Pre-Petition Credit Agreement and the amendments thereto is attached as Exhibit A to the Motion and incorporated herein by reference.  Unless otherwise specified, all capitalized terms used but not defined herein shall have the meanings given in the Pre-Petition Credit Agreement.

D.      Pursuant to that certain Limited Recourse Guaranty dated as of February 1, 2007 executed by Richard B. Gillman ("Guarantor") in favor of the Lender (the "Guaranty"), Guarantor has unconditionally guaranteed all of Borrower's Pre-Petition Indebtedness (as defined below) to the Lender, but not to exceed the sum of (i) all accounts receivable owing from ABC Glass Enclosures, LLC and/or its respective subsidiaries, successors and assigns (collectively, "ABC") to Borrower which remain unpaid for a period exceeding 90 days from the date of the initial invoice pertaining to such accounts receivable (collectively, the "ABC Past Due Accounts"), plus (ii) any promissory notes or other instruments evidencing accounts receivable or other payment obligations owing from ABC to Borrower which remain unpaid for a period exceeding 90 days (calculated per invoice basis) from the initial due date of the underlying account receivable or other payment obligation (collectively, together with the ABC Past Due Accounts, the "ABC Past Due Amounts"), plus (iii) interest on the ABC Past Due

3

Amounts at the highest rate provided in the Loan Agreement plus (iv) all costs and expenses, including, without limitation, all court costs and reasonable attorneys' and paralegals' fees, paid or incurred by Lender in endeavoring to collect all or any part of Borrower's Liabilities from, or in prosecuting any action against, Guarantor under this Guaranty. Pursuant to the Guaranty, Guarantor pledged substantially all of its assets to secure the Liabilities (as defined in the Pre-Petition Credit Agreement) of the Borrower. The Guaranty and any pledge or security agreements related thereto shall be deemed to be Pre-Petition Loan Documents. The Guaranty continues in full force and effect notwithstanding any financing and financial accommodations extended by the Lender to the Chapter 7 Trustee, on behalf of the Debtor's estate, pursuant to the terms of this Order.

E.      Without prejudice to the rights of the Chapter 7 Trustee (but subject to the limitations described in ordering paragraph 26 below), the Lender asserts that, in accordance with the terms of the Pre-Petition Loan Documents, the Borrower is truly and justly indebted to the Lender under the Pre-Petition Credit Agreement, without defense, counterclaim or offset of any kind, and that as of the Filing Date the Debtor is liable to the Lender in the aggregate principal amount of approximately $7,182,319 in respect of loans made by the Lender to the Debtor pursuant to the Pre-Petition Credit Agreement (plus attorneys' fees, costs and interest accrued and unpaid thereon) (the "Pre-Petition Indebtedness"). The provisions of this paragraph E constitute a stipulation by the Chapter 7 Trustee, on behalf of the Debtor, and not a finding by the Court, subject to the provisions of ordering paragraph 26 of this Order.

F.      Without prejudice to the rights of the Chapter 7 Trustee (but subject to the limitations described in ordering paragraph 26 below), the Lender, further asserts that, by reason of the Pre-Petition Loan Documents, the Pre-Petition Indebtedness is secured by enforceable

4

liens and security interests granted by the Debtor to the Lender, upon and in substantially all of the Debtor's tangible and intangible assets and property (other than the Excluded Property[1]), including, but not limited to, all of the Debtor's real property and all of the Debtor's other assets and property in which a security interest can be obtained under the Uniform Commercial Code (other than the Excluded Property) (including the setoff rights described below, the "Pre-Petition Collateral"), including without limitation, equipment, inventory, accounts receivable, instruments, chattel paper, general intangibles, contracts, documents of title, and all other tangible and intangible personal property and the proceeds and products thereof.

G.    The Debtor is a party to the following subordination agreements:  (a) that certain Subordination and Intercreditor Agreement, dated as of February 1, 2007, pursuant to which Veka Inc. agreed to subordinate the Borrower's indebtedness and other obligations to Veka Inc. to the Borrower's indebtedness and other obligations to Lender, (b) that certain Fourth Amended and Restated Subordination and Intercreditor Agreement, dated as of June 12, 2008, pursuant to which Chase Capital Corporation agreed to subordinate the Borrower's indebtedness and other obligations to Chase Capital Corporation to the Borrower's indebtedness and other obligations to Lender, (c) that certain Subordination Agreement, dated as of February 1, 2007, pursuant to which Larry Fields, agreed to subordinate the Borrower's indebtedness to Larry Fields to the Borrower's indebtedness and other obligations to Lender, (d) that certain Subordination

---

[1] "Excluded Property" is defined as: all Equipment, vehicles, furniture, furnishings and Fixtures (1) owned by Borrower as of the Closing Date or (2) acquired by the Borrower not later than sixty (60) days after the Closing Date in an aggregate sum not to exceed Two Hundred Thousand and no/100 Dollars ($200,000.00) or (3) acquired after the Closing Date with the proceeds of loans provided by any third party (other than Lender); provided, such financing and refinancing satisfies the requirements of subsection 13(b)(ix) of the Pre-Petition Credit Agreement and prohibits the existence of any subordinate lien upon such Equipment, vehicles, furniture, furnishings and/or Fixtures (the property described in clauses (1) and (2) above.

Agreement, dated as of February 1, 2007, pursuant to which Richard Gillman, agreed to subordinate the Borrower's indebtedness to Richard Gillman to the Borrower's indebtedness and other obligations to Lender, (e) that certain Subordination Agreement, dated as of February 1, 2007, pursuant to which Barry Dubin, agreed to subordinate the Borrower's indebtedness to Barry Dublin to the Borrower's indebtedness and other obligations to Lender, and (f) that certain Subordination and Intercreditor Agreement, dated as of March 9, 2007, pursuant to which Chase Lincoln First Commercial Corporation, agreed to subordinate the Borrower's indebtedness to Chase Lincoln First Commercial Corporation to the Borrower's indebtedness and other obligations to Lender (collectively, the "Subordination Agreements") Events of Default have occurred and are continuing under the Pre-Petition Credit Agreement.  As a result, such subordinated parties may not ask, demand, sue for, accept or receive, and Borrower may not pay to such subordinated parties, any payment of any Subordinated Debt (as defined in the Subordination Agreements) until the Indebtedness (as defined below) is indefeasibly paid in full in cash.

H.      The Chapter 7 Trustee, on behalf of the Debtor, does not have sufficient available sources of financing to liquidate and/or administer the Debtor's estate without the Post-Petition Financing and the use of the Lender's Cash Collateral.  In addition, the Chapter 7 Trustee's, on behalf of the Debtor's estate, critical need for financing is immediate.  In the absence of the Post-Petition Financing and such use of the Cash Collateral, serious and irreparable harm to the Debtor's estate would occur.

I.      Given the Debtor's current financial condition and capital structure, the Chapter 7 Trustee, on behalf of the Debtor's estate, is unable to obtain unsecured credit allowable under Bankruptcy Code § 503(b)(1) as an administrative expense.  Financing on a post-petition basis is

6

not otherwise available without the Chapter 7 Trustee, on behalf of the Debtor's estate, granting,

pursuant to Bankruptcy Code § 364(c)(1), claims having priority over any and all administrative

expenses of the kinds specified in Bankruptcy Code §§ 503(b) and 507(b), other than as

described below, and securing such indebtedness and obligations (including undrawn Letters of

Credit) with the security interests in and the liens upon the property described below pursuant to

Bankruptcy Code § 364(c).

    J.      Notice of the Final Hearing and the relief requested in the Motion has been given

to (i) the Office of the United States Trustee, (ii) all parties who have filed a notice of appearance

or requested notice in this case, and (iii) known holders of pre-petition liens against the Debtor's

property. This Final Hearing is being held pursuant to the provisions of Bankruptcy Rule

4001(c)(2).

    K.      Based on the record presented to this Court by the Chapter 7 Trustee, it appears

(and the Chapter 7 Trustee, on behalf of the Debtor and its estate, and the Lender have

stipulated) that the Post-Petition Financing has been negotiated in good faith and at arm's-length

between the Chapter 7 Trustee, on behalf of the Debtor's estate, and the Lender, and any credit

extended and loans made to the Chapter 7 Trustee, on behalf of the Debtor's estate, pursuant to

this Order shall be deemed to have been extended, issued or made, as the case may be, in good

faith as required by, and within the meaning of, Bankruptcy Code § 364(e).

    L.      Based on the record before this Court, it appears (and the Chapter 7 Trustee, on

behalf of the Debtor's estate, and the Lender have stipulated) that the terms of this Order,

including, without limitation, the terms of the Post-Petition Financing, are fair and reasonable,

reflect the Chapter 7 Trustee's, on behalf of the Debtor and its estate, exercise of prudent

7

business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

M.    The Chapter 7 Trustee, on behalf of the Debtor's estate, has requested immediate entry of this Order pursuant to Bankruptcy Rule 4001(c)(2). The permission granted herein to use Cash Collateral and enter into the Post-Petition Financing and obtain funds thereunder is necessary to avoid immediate and irreparable harm to the Debtor's estate. This Court concludes that entry of this Order is in the best interests of the Debtor's estate and creditors.

Based upon the foregoing findings, stipulations, and conclusions, and upon the record made before this Court at the Preliminary Hearing and the Final Hearing, and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED** that:

1.    <u>Motion Granted</u>. The Motion is granted, subject to the terms and conditions set forth in this Order.

2.    <u>Authorization</u>. The Chapter 7 Trustee, on behalf of the Debtor's estate, is expressly authorized and empowered to (i) borrow money, use Cash Collateral, and perform its obligations pursuant to the provisions of this Order and (ii) enter into such agreements, instruments and documents (collectively, if any, the "<u>DIP Loan Documents</u>") as may be necessary or required to evidence the Chapter 7 Trustee's obligations to the Lender, to consummate the terms and provisions of the Motion and this Order and to evidence perfection of the liens and security interests to be given to the Lender pursuant hereto and thereto; <u>provided</u> that such DIP Loan Documents are consistent with this Order. All post-petition loans and all other indebtedness and obligations incurred on or after the Filing Date by the Chapter 7 Trustee, on behalf of the Debtor's estate, to the Lender pursuant to this Order and the DIP Loan Documents (including principal, accrued and unpaid interest, and costs and expenses) are

8

referred to herein as the "DIP Indebtedness," and, together with the Pre-Petition Indebtedness, as the "Indebtedness."

     3.    Borrowing; Use of Cash Collateral.  Subject to the terms and conditions of this Order and the DIP Loan Documents, (a) the Lender hereby consents to the Chapter 7 Trustee's, on behalf of the Debtor's estate, limited use of the Lender's Cash Collateral and (b) the Lender will make post-petition loans to the Chapter 7 Trustee, on behalf of the Debtor's estate, in each case (x) in an aggregate weekly amount not to exceed the weekly amount specified in the Approved Budget (as defined below) for the applicable weekly period and (y) not to exceed in the aggregate with all Indebtedness the sum of the Commitment plus the Pre-Petition Indebtedness as of the Filing Date.  The Cash Collateral and the proceeds of any such post-petition loans shall be used to fund the budgeted expenditures set forth in the Approved Budget in accordance with the provisions of ordering paragraph 15 hereof.  Notwithstanding the foregoing, if the Lender in its sole discretion advances funds or other extensions of credit in excess of these limitations (or any other limitations in the DIP Loan Documents), such advances (and any other indebtedness in excess of such amount) shall constitute DIP Indebtedness entitled to the benefits of the DIP Loan Documents and this Order.

     4.    Existing Events of Default.  Nothing herein or in any of the DIP Loan Documents shall constitute or be deemed to constitute a waiver by the Lender of any existing or future Events of Default (including, without limitation, the Events of Default arising from the commencement of this Chapter 7 Case).  Without prejudice to, or waiver of, the Lender's rights and remedies against the Debtor, the Debtor's estate or the Chapter 7 Trustee, on behalf of the Debtor's estate, in respect of any Events of Default other than the Existing Defaults (as defined below), the Lender agrees to forbear from foreclosing its liens on any DIP Collateral (as defined

9

below) or otherwise taking enforcement action against the Debtor, the Debtor's estate or the Chapter 7 Trustee, on behalf of the Debtor's estate, based solely on any Event of Default which occurred prior to the entry of this Order and of which the Lender had actual knowledge as of such date (collectively, the "Existing Defaults"); provided that such forbearance shall terminate upon the earlier of (i) the occurrence of any Event of Default other than an Existing Default or (ii) the Loan Payment Date (as defined below).

5.    Interest, Fees, Costs and Expenses. All DIP Indebtedness shall bear interest as set forth in the Pre-Petition Credit Agreement. Interest on the DIP Indebtedness shall be payable monthly in arrears on the last day of each month. There shall be no provision for LIBOR-Rate Loans under the Post-Petition Financing. All fees payable under the Pre-Petition Credit Agreement shall be applicable to the Post-Petition Financing. On a monthly basis, the Lender shall be entitled to recover all of its reasonable out-of-pocket expenses, including an audit expense of $850 per person per day plus any additional out-of-pocket expenses, and including reasonable consultants', attorneys' and paralegals' fees, costs and expenses incurred in connection with the DIP Indebtedness to the extent provided in the Pre-Petition Credit Agreement, subject to disgorgement only pursuant to a final non-appealable order of this Court determining that the fees and expenses incurred and paid were unreasonable.

6.    Termination of Post-Petition Credit. The Lender's willingness to make loans hereunder and the Lender's consent to the Debtor's use of Cash Collateral shall immediately and automatically terminate (except as the Lender may otherwise agree in writing in its sole discretion), and all amounts borrowed whether pre-petition or post-petition shall be immediately due and payable in cash (except as the Lender may otherwise agree in writing in its sole discretion) upon the earliest to occur of the following (the "Loan Payment Date"):

(i)    the date of final indefeasible payment and satisfaction in full in cash of the Indebtedness;

(ii)    intentionally omitted;

(iii)    the occurrence of any violation by the Chapter 7 Trustee of this Order (including, but not limited to, the Chapter 7 Trustee's failure to adhere to the Approved Budgets as set forth in ordering paragraph 15 of this Order or violation of the covenants set forth in ordering paragraph 16 of this Order), or any Event of Default (as defined in the Pre-Petition Credit Agreement) other than the Existing Defaults;

(iv)    the dismissal of the Chapter 7 Case;

(v)    this Order is stayed, reversed, vacated, amended or otherwise modified in any respect without the prior written consent of the Lender (which consent may be withheld in its sole discretion);

(vi)    this or any other Court enters an order or judgment in the Chapter 7 Case modifying, limiting, subordinating or avoiding the priority of any Indebtedness or the perfection, priority or validity of the Lender's Adequate Protection Liens or pre-petition or post-petition liens on any DIP Collateral or imposing, surcharging or assessing against the Lender or its claims or any DIP Collateral any costs or expenses, whether pursuant to § 506(c) of the Bankruptcy Code or otherwise;

(vii)    the Chapter 7 Trustee files any application for approval or allowance of, or any order is entered approving or allowing, any administrative expense claim in the Chapter 7 Case, having any priority over, or being _pari passu_ with, the superadministrative priority of the Indebtedness;

(viii)    an order is entered in the Chapter 7 Case granting relief from the automatic stay of Section 362 of the Bankruptcy Code to any holder or holders of a lien on any material collateral in allowing such holder or holders to foreclose or otherwise realize upon such liens;

(ix)    any motion or application is filed by or on behalf of the Debtor in the Chapter 7 Case seeking the entry of an order, or an order is entered in the Chapter 7 Case, approving any subsequent facility for borrowed money or other extensions of credit unless such subsequent facility and such order expressly provide for the indefeasible payment and complete satisfaction in full in cash to the Lender of all Indebtedness prior to, or concurrently with, any initial borrowings or other extensions of credit under such subsequent facility; or

(x) February 28, 2009.

7.    Security for Indebtedness; Avoidance Actions.    (a)  The Lender is hereby
granted as security for the repayment of all amounts of the Lender's Cash Collateral used by the
Debtor and/or the Chapter 7 Trustee for the DIP Indebtedness, pursuant to §§ 363, 364(c)(2), and
364(c)(3) of the Bankruptcy Code, a valid and perfected first lien (the "Postpetition Liens"),
subject only to Prior Claims (as defined below), on all present and after-acquired intangible,
personal and real property of the Debtor of any nature whatsoever, including, without limitation,
all accounts receivable, equipment, inventory and cash contained in any account maintained by
the Debtor or the Chapter 7 Trustee, on behalf of the Debtor, all causes of action existing as of
the Filing Date and the proceeds thereof (including, without limitation, derivative actions and
other causes of action against the Debtor's officers, directors and employees), all causes of action
arising under the Bankruptcy Code, **including, without limitation, all avoidance actions under
Bankruptcy Code §§ 544 through 553 inclusive, and proceeds thereof ("Avoidance
Actions"), all claims for relief arising under Bankruptcy Code § 506 and proceeds thereof
and all real property, the title to which is held by the Debtor, or possession of which is held
by the Debtor or the Chapter 7 Trustee, on behalf of the Debtor's estate, pursuant to
leasehold interest (collectively with all proceeds and products of any or all of the foregoing,
the "DIP Collateral"); provided, however, that the Lender shall share the proceeds of
Avoidance Actions with the Chapter 7 Trustee, on behalf of the Debtor's estate, on a pro
rata (50/50) basis; provided, further, however, that as set forth in paragraph 8 hereof the
Lender's Postpetition Lien on Avoidance Actions shall secure the Pre-Petition Indebtedness
only to the extent (a) the value of the Pre-Petition Collateral plus all net proceeds of sales or
collections of Pre-Petition Collateral applied to the Pre-Petition Indebtedness as of any
post-petition date of determination is less than (b) the value of the Pre-Petition Collateral**

12

as of the Filing Date (whether such decline in value is attributable to physical deterioration, consumption, use, shrinkage, decline in market value or otherwise). As used herein, the term "Prior Claims" shall mean (i) the pre-petition liens and security interests of the Lender and (ii) any non-avoidable valid, enforceable and perfected liens and security interests in favor of any person or entity on or in the assets of the Debtor, as pre-petition debtor, which existed on the Filing Date and are not subject to § 552(a) of the Bankruptcy Code, but only to the extent such liens and security interests are superior in priority to the liens and security interests of the Lender, after giving effect to any existing subordination or intercreditor arrangements. Other than the Postpetition Liens and Adequate Protection Liens (defined below) in favor of the Lender pursuant to the DIP Loan Documents and this Order and the Prior Claims, no other claims, liens or security interests whether prior to or pari passu with the claims, liens or security interests of the Lender shall attach to the DIP Collateral in this or any subsequent or superseding cases (the "Successor Case") without the express written consent of the Lender (which consent may be withheld in its sole discretion). The Lender at its option may release at any time from its liens and security interests any assets determined by the Lender to have a risk of environmental liabilities which the Lender in its sole discretion deems unacceptable. In addition, except to the extent otherwise expressly set forth in this Order, or in a written instrument, agreement or other document executed by one or more duly authorized representatives of the Lender, no liens or security interests granted to the Lender, and no claim of the Lender, shall be subject to subordination to any other liens, security interests or claims under § 510 of the Bankruptcy Code or otherwise. Any security interest or lien upon the DIP Collateral which is avoided or otherwise preserved for the benefit of the Debtor's estate under § 551 or any other provision of the

13

Bankruptcy Code shall be subordinate to the security interests in and liens of the Lender upon the DIP Collateral and the Adequate Protection Liens.

(b)    As adequate protection of the interests of the Lender in the Pre-Petition Collateral, the Lender shall be entitled to replacement liens on all of the DIP Collateral (the "Adequate Protection Liens"), subject and subordinate only to the Postpetition Liens and the Prior Liens (but only to the extent such Prior Liens were senior in priority to the Lender's Liens as of the Petition Date).  Except as provided in this Order with respect to the Postpetition Liens, the Adequate Protection Liens on the DIP Collateral shall not be subject to or *pari passu* with any Lien on the DIP Collateral by any order subsequently entered in the Chapter 7 Case.

(c)    All Cash Collateral used by the Chapter 7 Trustee, on behalf of the Debtor's estate, and all DIP Indebtedness shall be deemed to be part of the Liabilities (as defined in the Pre-Petition Credit Agreement) of the Debtor or the Debtor's estate, as well as obligations and indebtedness of the Debtor hereunder.

8.    Limitations on Adequate Protection Liens and Cross-Collateralization. The Adequate Protection Liens granted in the DIP Collateral under the DIP Loan Documents and this Order shall secure the Pre-Petition Indebtedness only to the extent (a) the value of the Pre-Petition Collateral plus all net proceeds of sales or collections of Pre-Petition Collateral applied to the Pre-Petition Indebtedness as of any post-petition date of determination is less than (b) the value of the Pre-Petition Collateral as of the Filing Date (whether such decline in value is attributable to physical deterioration, consumption, use, shrinkage, decline in market value or otherwise).  The Lender shall be entitled to all of the rights accorded to it pursuant to § 507(b) of the Bankruptcy Code.

14

9.    Perfection of New Liens. All liens and security interests on or in the DIP

Collateral and Adequate Protection Liens granted to the Lender by this Order and the DIP Loan

Documents shall be, and they hereby are, deemed duly perfected and recorded under all

applicable federal or state or other laws as of the date hereof, and no notice, filing, mortgage

recordation, possession, further order, landlord or warehousemen lien waivers or other third

party consents or other act, shall be required to effect such perfection; provided, however, that

notwithstanding the provisions of § 362 of the Bankruptcy Code, (i) the Lender may, at its sole

option, file or record or cause the Chapter 7 Trustee to obtain any such landlord or

warehousemen lien waivers or other third party consents or execute, file or record, at the Chapter

7 Trustee's expense, any such UCC financing statements, notices of liens and security interests,

mortgages and other similar documents as the Lender may require, and (ii) the Lender may

require the Chapter 7 Trustee to deliver to the Lender any chattel paper, instruments or securities

evidencing or constituting any DIP Collateral, and the Chapter 7 Trustee is directed to cooperate

and comply therewith. If the Lender, in its sole discretion, shall elect for any reason to cause to

be obtained any landlord or warehouse lien waivers or other third party consents or cause to be

filed or recorded any such notices, financing statements, mortgages or other documents with

respect to such security interests and liens, or if the Lender, in accordance with the DIP Loan

Documents, shall elect to take possession of any DIP Collateral, all such landlord or warehouse

lien waivers or other third party consents, financing statements or similar documents or taking

possession shall be deemed to have been filed or recorded or taken in this Chapter 7 Case as of

the commencement of this Chapter 7 Case but with the priorities as set forth herein. The Lender

may (in its discretion) but shall not be required to, file a certified copy of this Order in any filing

or recording office in any county or other jurisdiction in which the Debtor has real or personal

15

CH\1076715.4

property and such filing or recording shall be accepted and shall constitute further evidence of perfection of the Lender's interests in the DIP Collateral.

      10.    Waiver. The Chapter 7 Trustee, on behalf of the Debtor and its estate (and any other party in interest acting on behalf of the Debtor) hereby irrevocably waive, and are barred from asserting or exercising any right, (a) without the Lender's prior written consent (which may be withheld in its sole discretion), or (b) without prior indefeasible payment and satisfaction in full in cash of the Indebtedness: (i) to grant or impose, or request that the Court grant or impose, under § 364 of the Bankruptcy Code or otherwise, liens on or security interests in any DIP Collateral, which are pari passu with or superior to the Lender's liens on and security interests in such DIP Collateral; (ii) to return goods pursuant to § 546(g) of the Bankruptcy Code to any creditor of the Debtor or to consent to any creditor taking any setoff against any of such creditor's pre-petition indebtedness based upon any such return pursuant to § 553(b)(1) of the Bankruptcy Code or otherwise; or (iii) to modify or affect any of the rights of the Lender under this Order or any DIP Loan Documents by any order entered in the Chapter 7 Case or any Successor Case.

      11.    Modification of Automatic Stay; Other Remedies.

      (a)    Except as set forth in subparagraph (b) of this paragraph, which governs any action by the Lender to foreclose on its liens on any DIP Collateral or to exercise any other default-related remedies (other than those specifically referenced in the next sentence), the automatic stay pursuant to § 362 of the Bankruptcy Code is hereby vacated as to the Lender to permit it to perform in accordance with, and exercise, enjoy and enforce its rights, benefits, privileges and remedies pursuant to this Order and the other DIP Loan Documents without further application or motion to, or order from, the Court, and regardless of any change in

CIN076715.4

circumstances (whether or not foreseeable), neither § 105 of the Bankruptcy Code nor any other provision of the Bankruptcy Code or applicable law shall be utilized to prohibit the Lender's exercise, enjoyment and enforcement of any of such rights, benefits, privileges and remedies. The Lender is hereby granted leave, among other things, to (a) receive and apply payments of the Indebtedness and collections on and proceeds of the Pre-Petition Collateral and the DIP Collateral to the Indebtedness in the manner specified in this Order and the DIP Loan Documents, (b) file or record any financing statements, mortgages or other instruments or other documents to evidence the security interests in and liens upon the DIP Collateral, (c) to the extent permitted by § 506(b) of the Bankruptcy Code, charge and collect any interest, fees, costs, and expenses and other amounts accruing at any time under the DIP Loan Documents or this Order as provided therein, (d) to give the Chapter 7 Trustee, on behalf of the Debtor and its estate, any notice provided for in any of the DIP Loan Documents or this Order, (e) cease making loans or other extensions of credit and/or suspend or terminate any obligation of the Lender to make loans or other extensions of credit under the DIP Loan Documents or this Order, and (f) upon the occurrence of an Event of Default other than any Existing Default, or upon the Loan Payment Date, and without application or motion to, or order from the Court or any other court, (i) terminate the Pre-Petition Credit Agreement and the Post-Petition Financing under this Order and the other DIP Loan Documents, (ii) declare all Indebtedness immediately due and payable, and require that all contingent Indebtedness (if any) be cash collateralized or terminated without liability to the Lender, and (iii) revoke the Chapter 7 Trustee's, on behalf of the Debtor's estate, right, if any, under this Order and/or the other DIP Loan Documents to use Cash Collateral.

17

(b)      Upon the occurrence of any Event of Default other than any

Existing Defaults, or upon the Loan Payment Date, the Lender shall be entitled (i) to file an

emergency motion for relief from the automatic stay for the purpose of foreclosing or otherwise

enforcing its liens on any or all of the DIP Collateral and/or to exercise any other default-related

remedies under the DIP Loan Documents, this Order or applicable law, and (ii) to obtain an

expedited hearing on such motion upon three (3) days' notice to counsel for the Chapter 7

Trustee and the U.S. Trustee. The Lender shall be entitled to such relief from the automatic stay

upon a showing only that one or more Events of Default (other than any Existing Default) have

occurred and are then continuing or that the Loan Payment Date has occurred. Upon the entry of

an order granting the Lender relief from the automatic stay to enforce its liens or to exercise any

other default-related remedies, (i) the Lender may exercise any remedies available to the Lender

under this Order, the Pre-Petition Credit Agreement and other Pre-Petition Loan Documents or

applicable law, including to foreclose on the Pre-Petition Collateral and the DIP Collateral, (ii)

provided that the Lender in its sole discretion has made available to the Debtor's estate (through

additional post-petition Loans or by consenting to the Chapter 7 Trustee's use of Cash Collateral)

sufficient funds to pay the costs thereof, the Chapter 7 Trustee shall cooperate with the Lender in

connection with any enforcement action by the Lender by, among other things, (A) providing

access to its premises to representatives of the Lender, (B) providing the Lender access to its

books and records, (C) performing all other obligations set forth in the Pre-Petition Credit

Agreement, the Pre-Petition Loan Documents, this Order and/or the other DIP Loan Documents,

and (D) taking reasonable steps to safeguard and protect the Pre-Petition Collateral and the DIP

Collateral until the Lender can make adequate provision to protect and safeguard the Pre-Petition

Collateral and the DIP Collateral, and the Chapter 7 Trustee shall not otherwise interfere or

18

encourage others to interfere with the Lender's enforcement of its rights. In addition, upon the

occurrence of any Event of Default (as determined by mutual agreement of the Chapter 7

Trustee, on behalf of the Debtor's estate and the Lender, or in the absence of such agreement, by

the Court) other than any Existing Default, or upon the Loan Payment Date, and provided that

the Lender in its sole discretion has made available to the Chapter 7 Trustee (through additional

post-petition loans or by consenting to the Chapter 7 Trustee's use of Cash Collateral) sufficient

funds to pay the costs thereof, the Chapter 7 Trustee, on behalf of the Debtor, shall, at the request

of the Lender if the Chapter 7 Trustee deems appropriate, use commercially reasonable efforts to

sell or otherwise dispose of the DIP Collateral on terms and conditions acceptable to the Lender

and shall turn over the proceeds of such sale(s) or other disposition(s) to the Lender for

application to the Indebtedness in accordance with the provisions hereof and the DIP Loan

Documents.

    12.    **Priority Claims; No 506(c) Charges.** **Except as set forth in paragraph**

**13 hereof, the DIP Indebtedness shall have the highest administrative priority under**

**§ 364(c)(1) of the Bankruptcy Code, and shall have priority over all other costs and**

**expenses of administration of any kind, including those specified in, or ordered pursuant**

**to, §§ 105, 326, 330, 331, 503(b), 506(c), 507(a), 507(b) or 726 or any other provision of the**

**Bankruptcy Code or otherwise (whether incurred in the Chapter 7 Case or any Successor**

**Case), and shall at all times be senior to the rights of the Debtor, the Chapter 7 Trustee or**

**any estate representative in the Chapter 7 Case or any Successor Case. No costs or**

**expenses of administration or other charge, lien, assessment or claim incurred at any time**

**(including, without limitation, any expenses set forth in any Approved Budget or any other**

**budget) by any person or entity shall be imposed against the Lender, its claims, or its**

19

collateral under § 506(c) of the Bankruptcy Code or otherwise, unless, prior to incurring

such costs or expenses the party proposing to incur such cost or expense shall obtain the

written consent of the Lender allowing such charge to be imposed against the Lender, its

claims or its collateral under § 506(c) of the Bankruptcy Code. Nothing in this Order or

the Approved Budget or any other budget shall constitute the consent by the Lender to the

imposition of any costs or expense of administration or other charge, lien, assessment or

claim (including, without limitation, any amounts set forth in the Approved Budget or any

other budget) against the Lender, its claims or its collateral under § 506(c) of the

Bankruptcy Code or otherwise.

13.    Limitation of Use of Indebtedness and Cash Collateral. The Lender's

liens on and security interests in the DIP Collateral and its administrative claims under

§ 364(c)(1) and 507(b) of the Bankruptcy Code shall be subject only to the payment of allowed

and unpaid fees and disbursements incurred by the Chapter 7 Trustee, including, without

limitation, trustee's fees calculated pursuant to § 326(a), plus the Chapter 7 Trustee's out of

pocket expenses, the Chapter 7 Trustee's counsel and the Chapter 7 Trustee's financial advisor

pursuant to § 327 of the Bankruptcy Code in an aggregate amount not to exceed $408,783, less

the sum of all unused post-petition retainers and all post-petition amounts paid to any such

professionals. Notwithstanding anything to the contrary in this Order or the DIP Loan

Documents, the pre-petition and post-petition liens and security interests and the administrative

priority claims of the Lender shall be senior to, and no proceeds of Indebtedness or Cash

Collateral (including any pre-petition retainer funded by the Lender pursuant to the Pre-Petition

Loan Documents) nor any Pre-Petition Collateral or DIP Collateral (or proceeds thereof) may be

used to pay, any and all claims for services rendered by any of the Chapter 7 Trustee and any

20

attorneys, advisors or other professionals employed by the Chapter 7 Trustee (collectively, the "Chapter 7 Professionals") in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek or the result of which would be to obtain any order, judgment, determination, declaration or similar relief:  (x) invalidating, setting aside, avoiding or subordinating, in whole or in part, the Indebtedness or the liens and security interests of the Lender in the Pre-Petition Collateral or the DIP Collateral; or (y) preventing, hindering or otherwise delaying, whether directly or indirectly, the exercise by the Lender of any of its rights and remedies under the Pre-Petition Credit Agreement, the Pre-Petition Loan Documents, this Order and/or the DIP Loan Documents or the Lender's enforcement or realization upon any of the liens on or security interests in any Pre-Petition Collateral or DIP Collateral; provided, however, that the foregoing limitations shall not apply to claims for services rendered by the Chapter 7 Professionals in connection with the investigation of the validity, extent, priority, avoidability or enforceability of the Pre-Petition Indebtedness or the Lender's pre-petition liens and security interests on the Pre-Petition Collateral. The Lender shall retain its rights as a party in interest to object to any claims of any of the Chapter 7 Professionals.

14.    Cash Collection Procedures. From and after the date of the entry of this Order all collections and proceeds of any DIP Collateral or services provided by the Debtor and all other cash or cash equivalents which shall at any time come into the possession or control of the Debtor or the Chapter 7 Trustee, or to which the Debtor shall become entitled at any time shall be deposited in the same bank accounts into which the collections and proceeds of the Pre-Petition Collateral were deposited under the Pre-Petition Credit Agreement (or in such other accounts as are designated by the Lender from time to time), and such collections and proceeds

21

upon such deposit shall become the sole and exclusive property of the Lender and shall be applied against the Pre-Petition Indebtedness and the DIP Indebtedness as provided in this Order. All cash and cash equivalents of the Debtor and the Debtor's estate currently in any account of the Debtor or otherwise in the possession or control of the Debtor or the Chapter 7 Trustee constitutes proceeds of the Pre-Petition Collateral and shall be immediately remitted to the Lender for application against the Pre-Petition Indebtedness. All financial institutions in which any lockboxes, blocked accounts or other accounts of the Debtor are located are hereby authorized and directed to comply with any request of the Lender to turnover to the Lender all funds therein without offset or deduction of any kind. Proceeds of Pre-Petition Collateral or DIP Collateral, whether paid into the Chapter 7 Trustee's deposit account or paid directly to the Lender, and the liquidation value of Pre-Petition Collateral or DIP Collateral with respect to which the Lender takes possession via relief from the automatic stay or otherwise, shall all be deemed to be "distributions" pursuant to Section 326(a) of the Bankruptcy Code and, subordinate to the limitations set forth in Section 13 hereof, the Lender's liens on and security interests in the DIP Collateral and its administrative claims under § 364(c)(1) and 507(b) of the Bankruptcy Code shall be subject only to such distributions to the extent of the Carve-Out.

15.     Budget; Use of Loan and Collateral Proceeds. Attached as Exhibit A hereto and incorporated herein by reference is a budget (which has been approved by the Lender) setting forth by line item all projected cash receipts and cash disbursements for the time period from December 12, 2008 through February 28, 2009 ("Initial Approved Budget"). The Initial Approved Budget may be modified or supplemented from time to time by additional budgets (covering any time period covered by a prior budget or covering additional time periods) to which the Lender and the Chapter 7 Trustee, on behalf of the Debtor and its estate, agree in

22

CH\1076715.4

writing in their respective sole discretion (each such additional budget, a "Supplemental Approved Budget"). The aggregate of all items approved by the Lender in the Initial Approved Budget and any and all Supplemental Approved Budgets (acceptable to the Lender in its discretion) shall constitute an "Approved Budget." The Chapter 7 Trustee's expenditures under any line item for any weekly period shall not exceed one hundred percent (100%) of the budgeted amount for such expenditure line item for such weekly period; provided that to the extent the actual amount of expenditures of the Chapter 7 Trustee, on behalf of the Debtor's estate, during any week covered by the Approved Budget is less than 100% of the amounts set forth in the Approved Budget for such week, the Chapter 7 Trustee, on behalf of the Debtor's estate, shall be permitted, to the extent that this Section 15 would otherwise be violated during any following week or weeks of the Approved Budget following such week, to deem such unused amounts to carry forward and be added to the amount during any such week or weeks without duplication. Within three (3) days after each weekly period, the Chapter 7 Trustee shall provide the Lender with a statement comparing actual expenditures with budgeted expenditures for such weekly period by line item. Except as otherwise provided in ordering paragraphs 17 and 18 hereof, the proceeds of any loans or other extensions of credit made by the Lender to the Chapter 7 Trustee, on behalf of the Debtor's estate, pursuant to this Order and the DIP Loan Documents, all proceeds of DIP Collateral and all Cash Collateral shall be used only as follows: (a) prior to the Loan Payment Date, for the payment of the expenses set forth in any Approved Budget (subject to the limitations and exceptions set forth in this ordering paragraph), and any portion of the Indebtedness, and (b) on or after the Loan Payment Date, first, for indefeasible payment in full in cash of the Indebtedness, and second, upon payment in full thereof in cash, then for the payment of any allowed administrative expenses or other claims in accordance with

the provisions of the Bankruptcy Code and orders of this Court (including any expenses which remain unpaid as of the Loan Payment Date, but were authorized by the Approved Budget and incurred prior to the Loan Payment Date). The Lender shall have no obligation with respect to the Chapter 7 Trustee's, on behalf of the Debtor's estate, use of the proceeds of the Post-Petition Financing, the DIP Collateral or Cash Collateral, and shall not be obligated to ensure or monitor the Chapter 7 Trustee's compliance with any Approved Budget or to pay (directly or indirectly from its DIP Collateral) any expenses incurred or authorized to be incurred pursuant to the Approved Budget. Funds borrowed under this Order and Cash Collateral used under this Order shall be used by the Chapter 7 Trustee, on behalf of the Debtor and its estate, in accordance with this Order. The Lender's consent to any Approved Budget shall not be construed as a consent to the use of any Cash Collateral or a commitment to continue to provide Post-Petition Financing after the occurrence of an Event of Default (other than the Existing Defaults) or beyond the Loan Payment Date, regardless of whether the aggregate funds shown on the Approved Budget have been expended. To induce the Lender to permit the Chapter 7 Trustee, on behalf of the Debtor and its estate, to use Cash Collateral and borrow additional funds, the Chapter 7 Trustee, on behalf of the Debtor and its estate has agreed, and this Court hereby orders, that as long as any Indebtedness is outstanding, the Chapter 7 Trustee, on behalf of the Debtor and its estate shall not seek, assert, argue for, encourage or support the use of Cash Collateral of the Lender by the Chapter 7 Trustee, on behalf of the Debtor and its estate, except as expressly permitted and consented to by the Lender pursuant to the terms of this Order.

16. <u>Covenants</u>. The Chapter 7 Trustee, on behalf of the Debtor and its estate, shall timely comply with all of the covenants set forth in the Pre-Petition Credit Agreement, the Pre-Petition Loan Documents, this Order and the other DIP Loan Documents. In addition to the

foregoing, the Chapter 7 Trustee hereby covenants and agrees that: (i) on or prior to February 2, 2009, he will file a motion (the "Auction Motion") to (a) retain an auctioneer to advertise and sell all assets of the Debtors' estate other than accounts receivable, causes of action, insurance claims, deposits and tax refunds (the "Auction Assets") and (b) sell the Auction Assets free and clear of all liens, (ii) on or prior to February 5, 2009, the Auction Motion shall have been approved by the Court, (iii) on or prior to February 18, 2009, the auctioneer will retained by the Chapter 7 Trustee will conduct an auction for the Auction Assets and (iv) the Chapter 7 Trustee will require all purchasers of assets remove such assets on or prior to February 27, 2009.

17.    Application of Collateral Proceeds.  All proceeds of Pre-Petition Collateral, and to the extent permitted under ordering paragraph 8 of this Order, proceeds of any DIP Collateral, from any sale, lease or other disposition of any Pre-Petition Collateral or DIP Collateral, and all other payments received by the Lender which are permitted to be applied to the Pre-Petition Indebtedness pursuant to the DIP Loan Documents and this Order, shall be applied (A) first, to the Pre-Petition Indebtedness (in such order as determined by the Lender in its sole discretion) until paid in full, and (B) second, to the DIP Indebtedness (in such order as determined by the Lender in its sole discretion).  All other proceeds of DIP Collateral and payments received by the Lender under the DIP Loan Documents and/or this Order shall be applied to the DIP Indebtedness (in such order as determined by the Lender in its sole discretion).

18.    Non-Ordinary Course Dispositions.  No sale, lease or other disposition of Pre-Petition Collateral or DIP Collateral outside the ordinary course of business (including any auction or other similar sales) may be done without the Lender's written consent.

19.    Books and Records; Access.

25

(a)    The Chapter 7 Trustee, on behalf of the Debtor and its estate, shall permit the Lender and any authorized representatives designated by the Lender (including, without limitation, its auditors, appraisers and financial advisors) to visit and inspect any of the properties of the Debtor, including the Debtor's financial and accounting records, and to make copies and take extracts therefrom, and to discuss the Debtor's affairs, finances and business with the Debtor's officers and independent public accountants, at such reasonable times during normal business hours and as often as may be reasonably requested. Without limiting the generality of the foregoing, the Chapter 7 Trustee, on behalf of the Debtor and its estate, shall promptly provide to the Lender and the Lender's designated representatives any information or data reasonably requested to monitor Chapter 7 Trustee's compliance with the covenants in the Pre-Petition Credit Agreement and the provisions of the DIP Loan Documents and this Order and to perform appraisals or other valuation analyses of any property of the Debtor.

(b)    Any party in possession of any assets owned by the Debtor's estate should grant the Chapter 7 Trustee and his representatives access to such assets and shall at the request of the Chapter 7 Trustee deliver such assets to the Chapter 7 Trustee.

20.    Authorized Signatories. The signature of the Chapter 7 Trustee or the Chapter 7 Trustee's attorneys shall bind the Debtor and the Debtor's estate, and no other approval shall be necessary.

21.    The Lender's Reservation of Rights; No Waiver. The Lender does not waive, and expressly reserves, any and all claims, defenses, rights and remedies it has pursuant to any or all of the DIP Loan Documents, the Bankruptcy Code and/or other applicable law against the Debtor and any officer, director, employee, agent, the Chapter 7 Trustee or other representative of the Debtor. In addition, the rights and obligations of the Chapter 7 Trustee and

CH\1076715.4

the Debtor and the rights, claims, liens, security interests and priorities of the Lender arising

under this Order are in addition to, and are not intended as a waiver or substitution for, the rights,

obligations, claims, liens, security interests and priorities granted by the Debtor, in its pre-

petition capacity, under the Pre-Petition Loan Documents. Without limiting the generality of the

foregoing, the Lender may petition this Court for any such additional protection it may

reasonably require with respect to the Pre-Petition Indebtedness, the DIP Indebtedness or

otherwise, and nothing in this Order constitutes a finding with respect to the adequacy of the

protection of the Lender's interests in the Pre-Petition Collateral.

22.    Order Binding on Successors. The provisions of this Order shall be

binding upon and inure to the benefit of the Lender, the Chapter 7 Trustee, on behalf of the

Debtor and its estate, the Debtor and their respective successors and assigns (including any other

estate representative appointed as a representative of the Debtor's estate or of any estate in any

Successor Case). Except as otherwise explicitly set forth in this Order, no third parties are

intended to be or shall be deemed to be third party beneficiaries of this Order or the DIP Loan

Documents.

23.    Effect of Dismissal, Conversion or Substantive Consolidation. If the

Chapter 7 Case is dismissed, converted, otherwise superseded or substantively consolidated, the

Lender's rights and remedies under this Order and the DIP Loan Documents shall be and remain

in full force and effect as if the Chapter 7 Case had not been dismissed, converted, superseded or

substantively consolidated. Furthermore, notwithstanding any such dismissal, conversion,

supercission or substantive consolidation, all of the terms and conditions of this Order, including,

without limitation, the liens and the priorities granted hereunder, shall remain in full force and

effect.

27

24.    <u>Releases and Validation of Pre-Petition Indebtedness and Liens;</u>
<u>Allowance of Secured Claim.</u>  The release, discharge, waivers and agreements set forth in
this ordering paragraph will be deemed effective upon the Expiration Date.  The Chapter 7
Trustee, on behalf of the Debtor and its estate, hereby:  (a) releases and discharges the
Lender, together with its affiliates, agents, attorneys, officers, directors and employees
from any and all claims and causes of action arising out of, based upon or related to, in
whole or in part, any of the Pre-Petition Loan Documents, any aspect of the pre-petition
relationship between the Lender and the Debtor, or any other acts or omissions by the
Lender in connection with any of the Pre-Petition Loan Documents or its pre-petition
relationship with the Debtor; (b) waives any and all defenses (including, without limitation,
offsets and counterclaims of any nature or kind) as to the validity, perfection, priority,
enforceability and nonavoidability (under §§ 510, 544, 545, 547, 548, 550, 551, 552 or 553 of
the Bankruptcy Code or otherwise) of the Pre-Petition Indebtedness and the security
interests in and liens on the Pre-Petition Collateral in favor of the Lender (which liens and
security interests are first priority subject only to the Prior Claims); and (c) agrees, without
further Court order and without the need for the filing of any proof of claim, to the
allowance of the pre-petition claims of the Lender pursuant to §§ 502 and 506 of the
Bankruptcy Code on account of the Pre-Petition Indebtedness as fully secured claims
according to the Lender's books and records, the principal amount of which is not less than
approximately $7,182,319 as of the Filing Date, plus accrued pre-petition and post-petition
interest, fees, expenses and other amounts chargeable under the Pre-Petition Loan
Documents.

25.   The Lender's Relationship with Chapter 7 Trustee, on behalf of the Debtor's estate.  In making decisions to advance any Loans or other extensions of credit to the Chapter 7 Trustee, on behalf of the Debtor's estate, in administering any Loans or other extensions of credit, or in taking any other actions reasonably related to this Order or the Indebtedness or the DIP Loan Documents (including, without limitation, the exercise of its approval rights with respect to any budget), the Lender shall have no liability to any third party (except for any liability to return to the Illinois Department of Revenue any funds received by Lender that are held by the Court, after notice and a hearing, to not be property of the estate, but instead trust funds of the Illinois Department of Revenue) and shall not be deemed to be in control of the operations of the Debtor or the Debtor's estate or to be acting as a "controlling person," "responsible person" or "owner or operator" with respect to the operation or management of the Debtor (as such term, or any similar terms, are used in the Internal Revenue Code, the United States Comprehensive Environmental Response, Compensation and Liability Act as amended, or any similar Federal or state statute), and the Lender's relationship with the Debtor or the Chapter 7 Trustee shall not constitute or be deemed to constitute a joint venture or partnership of any kind between the Lender, on the one hand, and the Debtor, the Chapter 7 Trustee or the Debtor's estate, on the other hand.

26.   **Objections by Chapter 7 Trustee. Except as set forth in finding paragraphs E and F, in ordering paragraph 24 and in this ordering paragraph, all of the provisions of this Order shall be final and binding on the Debtor, the Debtor's estate, the Chapter 7 Trustee and all creditors and other parties in interest.  The Chapter 7 Trustee shall have until February 18, 2009 (the "Expiration Date"), within which to file, on behalf of the Debtor and its estate, and to serve upon counsel for the Lender, objections or complaints**

29

respecting (a) the claims, causes of actions and defenses released by Chapter 7 Trustee, on

behalf of the Debtor and its estate, pursuant to ordering paragraph 24 above or (b) the

validity, extent, priority, avoidability, or enforceability of the Pre-Petition Indebtedness or

the Lender's pre-petition liens on and pre-petition security interests in the Pre-Petition

Collateral. In the event that no objections or complaints are filed with this Court and

served upon counsel of record for the Lender within the time period set forth above or no

order of this Court granting such objections or the relief requested in such complaints is

entered on or prior to February 18, 2009, the provisions of ordering paragraph 24 of this

Order shall become final and binding on all such parties.

27.    Subordination Agreements; Guaranty.

(a)    Pursuant to Bankruptcy Code § 510, the Subordination Agreements

remain in full force and effect. Events of Default have occurred and are continuing under the Pre-

Petition Credit Agreement, as described in finding paragraph G of this Order. Therefore, the

subordinated parties to the Subordination Agreements may not ask, demand, sue for, accept or

receive, and the Borrower may not pay to such subordinated parties, any payment of any Junior

Debt (as defined in the Subordination Agreements).

(b)    The Guaranty and any pledge or security agreements related thereto shall

be deemed to be Pre-Petition Loan Documents. The Guaranty shall continue in full force and

effect notwithstanding any financing and financial accommodations extended by the Lender to the

Debtor pursuant to the terms of this Order.

28.    Effect of Modification of Order. The Chapter 7 Trustee, on behalf of the

Debtor's estate, shall not, without the Lender's prior written consent, seek to modify, vacate or

amend this Order or any DIP Loan Documents. If any of the provisions of this Order are

hereafter modified, vacated or stayed by subsequent order of this or any other Court, such stay, modification or vacatur shall not affect the validity of any Indebtedness outstanding immediately prior to the effective time of such stay, modification or vacation, or the validity and enforceability of any lien, priority, right, privilege or benefit authorized hereby with respect to any such Indebtedness. Notwithstanding any such stay, modification or vacatur, any Indebtedness outstanding immediately prior to the effective time of such modification, stay or vacatur shall be governed in all respects by the original provisions of this Order, and the Lender shall be entitled to all the rights, privileges and benefits, including, without limitation, the security interests and priorities granted herein, with respect to all such Indebtedness.

29.    Safe Harbor.  The Court has considered and determined the matters addressed herein pursuant to its powers under the Bankruptcy Code, including the power to authorize the Chapter 7 Trustee, on behalf of the Debtor's estate, to obtain credit on the terms and conditions upon which the Chapter 7 Trustee, on behalf of the Debtor and its estate, and the Lender have agreed. Thus, each of such terms and conditions constitutes a part of the authorization under § 364 of the Bankruptcy Code, and is, therefore, subject to the protections contained in § 364(e) of the Bankruptcy Code.

30.    No Marshalling.  Except as otherwise agreed to in writing by Lender, the Lender shall not be under any obligation to marshall any assets in favor of the Debtor, the Debtor's estate or any other party or against or in payment of any or all of the Indebtedness.

31.    Objections Overruled or Withdrawn.  All objections to the entry of this Order have been withdrawn or overruled.

CH\1076715.4

32.   Controlling Effect of Order. To the extent any provisions in this Order
conflict with any provisions of the Motion, any Pre-Petition Loan Documents or any DIP Loan
Documents, the provisions of this Order shall control.

33.   Order Effective. This Order shall be effective as of the date of signature
by the Court.

34.   Chicago Rent. The "Initial Approved Budget" attached to the Interim
Order included a line item titled "Rent---Chicago Facility" in the amount of $60,000 for rent to
be paid to the landlord of the Debtor's Chicago facility (the "Chicago Facility Rent"). The
Interim Order and this Order are without prejudice to any claim of the landlord for the Chicago
facility for amounts owed to it for any portion of or all of the month of December 2008 and the
Chapter 7 Trustee, on behalf of the Debtor's estate, and all other parties reserve the right to
dispute any such claims.

35.   Illinois Department of Revenue. Nothing in this order shall be construed
to preclude the Illinois Department of Revenue (the "Department") from attempting to establish
that funds held by the Chapter 7 Trustee or any other party are held in trust for the Department
and shall not preclude the Department from seeking additional relief with respect to those funds.
Likewise, nothing in this Order shall preclude the Chapter 7 Trustee or any creditor from
challenging any such assertions or contending that any such funds are not held in trust for the
Department. If, after notice and a hearing, the Court determines that such funds are not property
of the estate, but instead constitute trust funds of the Department, the security interests provided
for herein shall not diminish in any way the rights, if any, of the Department as a trust fund
claimant to obtain possession of funds subject to its trust claims or to impose any additional
liability on the holder of the trust funds to the extent allowed by law. Funds which the Court,

32

CIN1076715.4

after notice and hearing, determines do not constitute property of the Debtor's estate, but instead constitute trust funds of the Department, shall not constitute the collateral of any secured creditor.

CI1\1076715.4

IT IS SO ORDERED.

DATED this **30th** day of **January**, 2009.

*Jacqueline P. Cox*

J. Cox

_____
UNITED STATES BANKRUPTCY JUDGE

Stipulated and Agreed:


By: /s/ Scott Clar
    Scott Clar
    Crane, Heyman, Simon, Welch & Clar
    135 S. LaSalle St., Suite 3705
    Chicago, Illinois
    Proposed Counsel to the Chapter 7 Trustee


By: /s/ Caroline Reckler
    Josef Athanas
    Caroline Reckler
    Latham & Watkins LLP
    Sears Tower, Suite 5800
    233 S. Wacker Drive
    Chicago, Illinois 60606
    (312) 876-7700
    Attorneys Bank of America, as successor by merger to
    LaSalle Business Credit, LLC, as the Lender

CHI\076715.4

## **EXHIBIT A**

Budget

1 of 3

Republic Windows & Doors, LLC - Chapter 7 Case - No. 08-34113
United States Bankruptcy Court Northern District of Illinois - Case Filed December 12, 2008
Thirteen Budget - December 12, 2008 - March 7, 2009

| | Week 1 12/12/08 - 12/13/08 | Week 2 12/20/08 - 12/26/08 | Week 3 12/27/08 - 1/2/09 | Week 4 1/3/09 - 1/9/09 | Week 5 1/10/09 - 1/16/09 | Week 6 1/17/09 - 1/23/09 | Week 7 1/24/09 - 1/30/09 | Week 8 1/31/09 - 2/6/09 | Week 9 2/7/09 - 2/13/09 | Week 10 2/14/09 - 2/20/09 | Week 11 2/21/09 - 2/27/09 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Cash Receipts** | | | | | | | | | | | | |
| All Collections & COD Sales | 36,564 | 26,533 | 11,961 | 16,339 | 11,562 | 28,000 | 25,200 | 23,000 | 25,000 | 25,000 | 0 | 187,752 |
| Bank Lockbox Deposit | 0 | 18,808 | 4,812 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 103,933 |
| IRS Refund | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 18,808 |
| Liquidation of Assets | | | | | | | | | | | | |
| Sec 363 Sale - Various Matures | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Sec 363 Sale - Actionvents | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2,300,000 | 0 | 2,300,000 |
| Fraudulant Conveyance Actions | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Preference Actions | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Insurance Proceeds | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Reimbursement for Damages to Collateral | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Other Cash Deposit | 0 | 0 | 1,100 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 100 |
| **Total Cash Receipts** | 136,564 | 44,371 | 15,900 | 16,339 | 11,562 | 28,000 | 25,200 | 25,000 | 25,000 | 25,000 | 0 | 2,631,864 |
| | | | | | | | | | | | | |
| **Cash Disbursements** | | | | | | | | | | | | |
| **Preservation of Collateral** | | | | | | | | | | | | |
| Insurance | | | | | | | | | | | | |
| - Property & Casualty | 0 | 0 | 0 | 10,474 | 0 | 0 | 50,000 | 0 | 0 | 0 | 0 | 60,474 |
| - D & O Policy | 0 | 0 | 0 | 2,005 | 2,216 | 2,000 | 0 | 0 | 0 | 0 | 0 | 6,400 |
| - Crime Policy | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| - Worker Comp - Office Workers | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 100 |
| - Worker Comp - Expired Plea Nrng | 0 | 0 | 1,100 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Total Insurance** | 0 | 0 | 4,100 | 12,479 | 2,216 | 2,000 | 50,000 | 0 | 0 | 0 | 0 | 67,061 |
| Rent | | | | | | | | | | | | |
| - Goose Island Facility | 0 | 0 | 0 | 0 | 60,000 | 0 | 0 | 60,000 | 0 | 0 | 0 | 120,000 |
| - Goose Island - Building Repairs | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 48,000 | 43,000 |
| - Goose Island - 12/12-12/31/08 Accrual | 0 | 0 | 0 | 0 | 0 | 36,774 | 0 | 0 | 0 | 0 | 0 | 36,774 |
| - Bensenville Dist Nation Center | 0 | 0 | 15,000 | 15,000 | 0 | 0 | 0 | 15,000 | 0 | 0 | 0 | 20,000 |
| - Bensenville D.C. 12/12-12/31/08 Accrual | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 56,796 |
| **Total Rent** | 0 | 0 | 15,000 | 15,000 | 60,000 | 36,774 | 0 | 75,000 | 0 | 0 | 48,000 | 326,774 |
| Utilities - Goose Island & Bensenville | | | | | | | | | | | | |
| - Electricity | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 60,000 | 0 | 0 | 0 | 60,000 |
| - Phone & Internet | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 5,000 | 0 | 0 | 0 | 6,000 |
| - Gas | 0 | 0 | 0 | 0 | 25,000 | 0 | 0 | 0 | 0 | 0 | 0 | 25,000 |
| - Water | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 3,000 | 0 | 0 | 0 | 3,000 |
| - Adequate Assurance Deposits | 0 | 0 | 0 | 0 | 66,760 | 0 | 0 | 0 | 0 | 0 | 0 | 66,760 |
| - Electricity | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| - Water | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| - Gas | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Total Utilities** | 0 | 0 | 0 | 0 | 91,760 | 0 | 0 | 68,000 | 0 | 0 | 0 | 159,760 |
| Computers | | | | | | | | | | | | |
| - IT Regulatory & License Charges | 0 | 0 | 0 | 0 | 0 | 464 | 0 | 500 | 0 | 0 | 0 | 2,064 |
| - Computer Repairs | 0 | 0 | 0 | 0 | 0 | 0 | 4,000 | 0 | 0 | 0 | 0 | 500 |
| - Computer IT Assistance | 0 | 1,600 | 1,600 | 2,000 | 2,000 | 2,000 | 0 | 200 | 2,000 | 2,000 | 2,000 | 18,000 |
| - Other IT Expenses | 0 | 940 | 1,280 | 1,600 | 1,600 | 1,680 | 1,620 | 1,600 | 1,600 | 1,600 | 1,600 | 15,040 |
| - Ryan Harvell | 0 | 800 | 0 | 0 | 0 | 0 | 0 | 500 | 0 | 0 | 0 | 800 |
| - Ed Schneider | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 250 | 0 | 0 | 0 | 250 |
| **Total Computer Related** | 0 | 2,960 | 2,880 | 3,600 | 4,650 | 5,604 | 5,100 | 2,350 | 5,000 | 5,000 | 3,800 | 45,664 |

Consolidate Inventory in Goose Island;
Perform a physical Inventory of Finished
Goods, Work In Process and Equipment;
Determine What can be Sold
- Temp Workers to Assist
- Office Workers to Assist
- Arnold Jaquim
- Ryan Harvell
- Ed Schneider
- Freight Charges to Move
Total Inventory Related

Security

Republic Windows & Doors, LLC - Chapter 7 Case - No. 08-34113
United States Bankruptcy Court, Northern District of Illinois - Case Filed December 12, 2008
Revised Budget - December 12, 2008 - April 31, 2009

| | Week 1 12/7-12/13 | Week 2 12/12-12/18 | Week 3 12/21-12/27 | Week 4 10/28-1/9/09 | Week 5 1/1-1/9/09 | Week 6 1/11-1/09-1/23/09 | Week 7 1/21/09-1/30/09 | Week 8 2/6/09 | Week 9 2/7/09-2/13/09 | Week 10 2/14/09-2/20/09 | Week 11 2/21/09-2/27/09 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **AR Collections & COD Sales** | | | | | | | | | | | | |
| 24 Hour security force | 0 | 0 | 0 | 0 | 0 | 0 | 0 | | | | | |
| Misc. Exp. - Self for walkways | | | | | | | | | | | | 400 |
| Total Security Related | 0 | 0 | 0 | 0 | 0 | 0 | 0 | | | | | |
| **AR Collections & COD Sales** | 2,860 | 2,880 | | | 25,536 | 9,500 | 9,500 | 9,500 | 9,500 | 9,500 | 9,500 | |
| **Office Employee** | | | | | | | | | | | | |
| Carol Harris | 600 | 600 | 600 | | 600 | 600 | 600 | 600 | 600 | | | 1,200 |
| Extended Friends | 843 | 1,20 | 1,400 | 1,400 | 1,400 | 420 | 1,400 | 1,400 | 1,400 | | | 9,300 |
| Melinda Munoz | 990 | 990 | 1,130 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | | | | 10,346 |
| Jerome Martin | 1,940 | 1,940 | 1,300 | 1,300 | 1,300 | 1,300 | 1,300 | 1,300 | 1,300 | | | 12,235 |
| Total Payroll Related | 2,580 | 3,940 | 4,800 | 4,800 | 4,800 | 4,800 | 4,800 | | | | | 44,620 |
| **Office Supplies** | | | | | | | | | | | | |
| Copy Paper, Other Supplies | | | | | | | 130 | | | | | 100 |
| Garbage Bags, Cleaning Supplies | 0 | 0 | 0 | 0 | 0 | 100 | | | | | | 100 |
| **TOTAL - AR Collections & COD Sales** | 2,860 | 3,940 | 4,800 | 4,800 | 4,800 | 6,000 | 4,800 | 4,800 | 4,800 | | | 45,100 |
| **Bankruptcy Schedules & Stmt. Of Fin. Affairs, UST Fees** | | | | | | | | | | | | |
| **Office Employee** | | | | | | | | | | | | |
| Cara Star - Computer | 1,650 | 2,750 | 2,750 | 2,750 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 9,950 |
| Quarterly U.S. Trustee Fees | | | | | 1,500 | | 1,500 | | | | | 1,500 |
| Total Schedules & Fees | 1,940 | 3,208 | 2,710 | 2,790 | 0 | 1,500 | 0 | 0 | 0 | 0 | 0 | |
| **Corporate Overhead** | | | | | | | | | | | | |
| **Office Employee** | | | | | | | | | | | | |
| Megan Costigan - HR | 900 | 1,940 | 2,900 | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 5,000 |
| Greg Star - Controller | 0 | 0 | 0 | | 2,750 | 2,750 | 2,750 | 2,750 | 2,750 | 2,750 | 2,750 | 15,500 |
| Employee Payroll Taxes | 643 | 923 | 1,209 | 815 | 925 | 925 | 925 | 925 | 925 | | | 8,860 |
| 2008 W-2 Preparation | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 3,147 |
| Accrued Sales Tax on COD Sales | 0 | 0 | 0 | 0 | 0 | 600 | 0 | 600 | 0 | 0 | 0 | 500 |
| Third-Party Payroll Preparation | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | |
| Photocopier Rental | 0 | 2,790 | 0 | 0 | 0 | 0 | 0 | 230 | 0 | 0 | 0 | 4,240 |
| Repair & Maintenance - Phone System | 0 | 0 | 0 | 0 | 529 | | | | | | | 529 |
| Waste Removal, Recycling, Other | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 9,500 | 0 | 8,500 | 1,000 | 17,000 |
| Other Related Corp. Overhead Costs | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 5,000 | 0 | 0 | 0 | 5,000 |
| **TOTAL - Corporate Overhead** | 1,943 | 4,703 | 3,320 | 3,963 | 4,203 | 3,375 | 1,875 | 18,896 | 1,875 | 10,121 | 4,475 | |
| **Preparation for Preference & Fraudulent Conveyance Actions** | | | | | | | | | | | | |
| **Records Retrieval** | | | | | | | | | | | | |
| Boxes to insert records | 0 | 0 | 0 | 0 | 1,500 | 0 | 0 | 2,000 | 0 | 0 | 0 | 3,590 |
| Labels to affix to record boxes | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 250 | 0 | 0 | 0 | 250 |
| Transportation to Records Storage | 0 | 0 | 0 | 0 | 2,500 | 0 | 0 | 2,580 | 0 | 0 | 0 | 5,000 |
| Rent for Records Storage Facility | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 5,000 | 0 | 0 | 0 | 5,000 |
| Other supplies for records removal | 0 | 0 | 0 | 0 | 150 | 0 | 0 | 150 | 0 | 0 | 0 | 300 |
| Total to Remove Records | 0 | 0 | 0 | 0 | 1,060 | 0 | 0 | 9,860 | 0 | 0 | 0 | 14,720 |
| **Computer Removal** | | | | | | | | | | | | |
| - Third-party computer company budget - Inventory List & Assignment Data Center Assets, Power Down & Secure the Servers & Disk Arrays, Packaging & Labeling of Equipment | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 16,000 | 0 | 0 | 0 | 16,000 |
| Transportation to Store Computers | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 3,300 | 0 | 0 | 0 | 3,300 |
| Rent for Computer Storage | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 5,000 | 0 | 0 | 0 | 5,000 |

3 of 3

Republic Windows & Doors, LLC - Chapter 7 Case - No. 08-34113
United States Bankruptcy Court, Northern District of Illinois - Case Filed December 12, 2008
Revised Budget: (December 12, 2008 - March 31, 2009)

| | Week 1 12/13/08-12/19/08 | Week 2 12/20/08-12/26/08 | Week 3 12/27/08-1/2/09 | Week 4 1/3/09-1/9/09 | Week 5 1/10/09-1/16/09 | Week 6 1/17/09-1/23/09 | Week 7 1/24/09-1/30/09 | Week 8 1/31/09-2/6/09 | Week 9 2/7/09-2/13/09 | Week 10 2/14/09-2/20/09 | Week 11 2/21/09-2/27/09 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total to Remove Computers | | | | | | | | | | | | 24,000 |
| Reconstruction of Records | | | | | | | | | | | | |
|  - Cost to access record books & Re-erect | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 500 | 500 |
|  - Cost to recreate the computers | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Total to Access Computers & Records | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 500 | 500 |
| TOTAL - Preparation for Professors & Amortized Chronovision Actions | 0 | 0 | 0 | 0 | 1,000 | 2,900 | 0 | 33,500 | 0 | 0 | 400 | 24,725 |
| Sec. 363 Sale - Serious Solicitors | | | | | | | | | | | | |
| Preparation for the Hearing | | | | | | | | | | | | |
|  - Advertising to Notice Up the Pending Hearing | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| TOTAL - Cost of Securing a Sec. 363 Buyer Sale | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Sec. 363 Sale - Auction of Assets | | | | | | | | | | | | |
| Marketing Budget - Auction Houses | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 13,000 | 0 | 0 | 10,000 |
| TOTAL - Cost of Securing a Sec. 363 Liquidation Auction | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 10,000 | 0 | 0 | 15,000 |
| Professionals | | | | | | | | | | | | |
|  - Chapter 7 Trustee | 0 | 0 | 0 | 25,000 | 0 | 0 | 55,000 | 0 | 0 | 0 | 0 | 25,000 |
|  - Legal Counsel to the Chapter 7 Trustee | 0 | 0 | 0 | 25,000 | 25,000 | 25,000 | 50,000 | 0 | 0 | 0 | 0 | 75,000 |
|  - Financial Advisor to the Chapter 7 Trustee | 0 | 29,882 | 15,401 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 247,283 |
|  - Accounting Advisor to the Chapter 7 Trustee (Preferences & Other Related Totals) | 0 | 0 | 0 | 0 | 0 | 0 | 13,000 | 0 | 0 | 0 | 0 | 10,000 |
|  - Special Counsel - Trademark Review | 0 | 0 | 0 | 0 | 0 | 0 | 7,500 | 0 | 0 | 0 | 0 | 7,500 |
| TOTAL - Professionals | 0 | 25,882 | 15,401 | 75,000 | 25,000 | 25,000 | 142,500 | 25,000 | 25,000 | 25,000 | 25,000 | 459,783 |
| Total Costs Disbursements | 135,684 | 34,838 | 38,206 | 116,957 | 130,383 | 194,146 | 228,276 | 245,191 | 66,674 | 45,276 | 98,075 | 1,153,231 |
| Cash Receipts Various Cash Disbursements (Deficit) Surplus | 135,684 | 10,446 | (14,360) | (100,648) | (118,401) | (185,340) | (196,276) | (216,180) | (33,578) | 2,098,725 | 98,075 | 1,484,723 |